IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>vs.<br><br>MICHAEL ANTHONY CLAY,<br><br>　　　Defendant. | No. 4:09-cr-00182-JEG<br><br>O R D E R |

This matter is before the Court on a Motion to Suppress brought by Defendant Michael Clay (Defendant). The Government resists. The Court granted Defendant's request for a hearing, which was held on March 9, 2010. Defendant was represented by Federal Public Defender Nicholas Drees. The Government was represented by Assistant United States Attorney Mary Luxa. The matter is fully submitted and ready for review.

**I.　BACKGROUND**

In May 2009, a confidential informant (CI) provided Des Moines Police Officer Robert Hoelscher (Officer Hoelscher) with information regarding Defendant's sale of marijuana and cocaine from Defendant's apartment on 18th Street in Des Moines, Iowa (18th Street apartment). Defendant lived in apartment number four, one of six apartment units in the building. The CI described Defendant as a six-foot tall, 185-pound black male.

Officer Hoelscher used the CI to conduct a series of three controlled marijuana buys from Defendant at the 18th Street apartment. Officer Hoelscher followed the same steps in conducting each buy, which included (1) searching the CI to ensure that the CI did not have any drugs, money, or other contraband prior to the buy; (2) giving the CI Des Moines Police Department money to use in the buy; (3) following the CI to and from the buy location; (4) meeting with the CI following the buy to recover narcotics the CI purchased; (5) searching the CI again for drugs, money, or other contraband to make sure that the CI did not obtain any of these items in the process of making the buy; and (6) debriefing the CI.

The first controlled buy of marijuana from Defendant took place between June 9, 2009, and June 11, 2009.[1] Following the above protocol, Officer Hoelscher and Des Moines Police Officer John Scarlett (Officer Scarlett) met and searched the CI for money, drugs, or contraband, and found nothing. Officer Hoelscher then gave the CI buy money and instructed the CI to use the money to purchase marijuana from Defendant. Officers Hoelscher and Scarlett followed the CI, without making any stops, from the meeting location to the 18th Street apartment.

Des Moines Police Officer Michael Bartak (Officer Bartak) conducted surveillance of the 18th Street apartment building during the controlled buy and witnessed the CI enter the back door of the apartment building and exit through the same door a short time later. Officers Hoelscher and Scarlett followed the CI to a predetermined meeting location, without making any stops, and the CI provided the officers with the marijuana the CI purchased from Defendant. Officer Hoelscher again searched the CI for any other money, drugs, or contraband, and found nothing.

Next, Officer Hoelscher debriefed the CI and learned that after the CI entered the apartment building, he walked up to the second floor, knocked on the door to apartment number four, met Defendant, and was told by Defendant to go back down to the bottom of the stairs and wait. The CI followed Defendant's instructions. From below, the CI could observe Defendant next went to apartment number five, also on the second floor of the apartment building, met with an individual in apartment number five, and after approximately thirty seconds, Defendant asked the CI to return to the second floor. Defendant reportedly delivered marijuana to the CI, and the CI exited the apartment building. Officer Hoelscher also showed the CI a picture of Defendant during the debriefing, and the CI positively identified the individual depicted as Defendant, the

---

[1] Officer Hoelscher did not reveal the exact date of the any of the controlled buys in an effort to protect the identity of the CI.

man from whom the CI purchased marijuana.[2]  Officer Hoelscher testified that the CI provided him with detailed information about the controlled buy.  Officer Scarlett similarly testified that the CI provided detailed answers to questions put to the CI by Officer Hoelscher.

Between June 17, 2009, and June 19, 2009, Officer Hoelscher arranged another controlled buy using the CI.  The second controlled buy proceeded in nearly identical fashion to the first.  Officers Hoelscher and Bartak met with the CI at a predetermined location, searched the CI and found nothing, gave the CI buy money, and, without making any stops, followed the CI to Defendant's apartment.  Des Moines Police Officer Chapman (Officer Chapman) conducted surveillance during the second buy.  Officer Chapman witnessed the CI enter the back door of Defendant's apartment building and then leave a short time later.  After the CI exited the apartment building, Officers Hoelscher and Bartak followed the CI, without making any stops, to the predetermined meeting location, where the CI provided the officers with the marijuana the CI had purchased from Defendant.  Officer Bartak again searched the CI for other money, drugs, or contraband, and found nothing.

Officer Hoelscher debriefed the CI as before and learned that the CI met Defendant in the hallway immediately outside apartment number four on the second floor of the building.  The CI then provided Defendant with the agreed amount of money; this time Defendant reentered apartment number four for thirty seconds, and Defendant returned a moment later and delivered marijuana to the CI.  The CI then walked back downstairs and exited the building from the same door the CI had entered.

Based upon the information gathered from these two controlled buys, Officer Hoelscher prepared an application for a search warrant for the 18th Street apartment.  Officer Hoelscher sent the application to an assistant Polk County, Iowa, attorney for review.  Officer Hoelscher

---

[2] Because the CI was previously familiar with the Defendant, this identification only furthered the CI's statements regarding the Defendant's identity.

testified that in his experience, if the assistant Polk County attorney does not believe that the facts Officer Hoelscher provided establish probable cause for a search warrant to issue, then the assistant Polk County attorney will return the application to Officer Hoelscher for Officer Hoelscher to gather additional information. After Officer Hoelscher learned that he did not need to gather additional information to support his application, he presented the application to Polk County District Associate Judge Cynthia Moisan (Judge Moisan) on June 19, 2009; and, on that same day, Judge Moisan issued a warrant to search Defendant's 18th Street apartment. However, because the tactical unit needed to execute the warrant could not be secured to conduct the search, the warrant was not executed and became stale.[3]

Between July 28, 2009, and July 30, 2009, Officer Hoelscher arranged a third controlled buy of marijuana from Defendant. Again, Officers Hoelscher and Scarlett met the CI at a pre-determined location, searched the CI and found nothing, gave the CI buy money, and followed the CI, without making any stops, to Defendant's apartment. Officer Bartak again conducted surveillance of Defendant's apartment building and witnessed the CI enter Defendant's apartment building through the back door and exit a short time later through the same door. After the CI exited Defendant's apartment building, Officers Hoelscher and Scarlett followed the CI, without making any stops, to the predetermined meeting location, and the CI provided Officer Hoelscher the marijuana that the CI had purchased from Defendant.

Officer Hoelscher once again debriefed the CI and learned that the CI walked up the stairs at the 18th Street apartment building and knocked on the door to apartment number four. Defendant answered the door, the CI handed Defendant buy money, and Defendant gave the CI marijuana. The CI then walked back downstairs and exited the apartment building.

---

[3] The determination that the warrant was stale was made by law enforcement in the context of this investigation and involved no determination by this Court.

Using the information he had gathered from all three controlled buys, Officer Hoelscher prepared a second search warrant application for the 18th Street apartment. Officer Hoelscher's application included (1) Attachment A, which was an affidavit summarizing the three completed controlled buys and the other investigative work completed by law enforcement; (2) Attachment B, which indicated that the informants were the CI and Officers Scarlett, Chapman, and Bartak, that the three officer informants were named and had not previously given false information, and that the information supplied by informants, including that provided by the CI, had been corroborated by law enforcement; and (3) Attachment C, which was a photo from the Polk County Assessor's website of Defendant's apartment building.

Law enforcement had additional corroborating information that was not included in the search warrant application.[4] Officer Hoelscher testified that he completed a walk through of Defendant's apartment building before the search warrant was issued. During this walk through, Officer Hoelscher confirmed that the layout of the apartment building was as the CI described and that apartment number four was located on the second floor of the southeast corner of the building as the CI stated. Officer Hoelscher also attempted to verify that apartment number four's electrical bill was in Defendant's name but learned that it was registered to the apartment building's rental company instead.

Officer Hoelscher also testified that during the first and third controlled buys, the CI wore an electronic transmitter that allowed Officer Hoelscher to listen to the CI's conversations during the buys. Although Officer Hoelscher could hear only every other word, he testified that he was able to get the gist of what occurred during the buys. Officer Hoelscher said that what he heard was consistent with what the CI told him during debriefing after the buys. Officer Hoelscher did

---

[4] The Court references facts not contained in the warrant application and not provided to the state judge solely as these facts relate to the objective reasonableness of the officers' reliance on the state judge's issuance of the warrant. See discussion at p. 10 infra.

not include information about the listening device in his application for a search warrant because he did not believe that it was necessary.

As before, Officer Hoelscher submitted the second warrant application to an assistant Polk County attorney for review. The reviewing attorney did not advise Officer Hoelscher that he needed to provide more information to support the application. On July 30, 2009, Officer Hoelscher presented the application to Judge Moisan, and Judge Moisan issued a warrant to search the 18th Street apartment. The following day, July 31, 2009, officers executed the search warrant and found a loaded pistol, mail addressed to Defendant at the 18th Street apartment, a digital scale, two hundred dollars, and miscellaneous drug paraphernalia. As a result of this evidence found during the search of Defendant's residence, an arrest warrant was issued, and Defendant was arrested on November 13, 2009.

On November 17, 2009, the Grand Jury returned a two count indictment charging Defendant with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and one count of forfeiture. Defendant filed this Motion to Suppress on January 15, 2010, arguing that the search warrant application did not provide sufficient probable cause to support the issuance of a warrant to search Defendant's 18th Street apartment because law enforcement did not corroborate the CI's statements. Additionally, Defendant argues that even if the Court found that probable cause existed to support the issuance of the warrant, the Leon[5] good-faith exception would not apply because no reasonably well-trained officer would believe that the affidavit provided sufficient probable cause. The Government resists, declining to argue that probable cause to support the issuance of the warrant existed and instead arguing only that the Leon good-faith exception applies.

---

[5] United States v. Leon, 468 U.S. 897 (1984).

**II.     DISCUSSION**

The Court "may consider the applicability of the good-faith exception to the exclusionary rule before reviewing the existence of probable cause. If the officers acted in good-faith reliance on a warrant, then there is no need to visit the underlying question of probable cause." United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006) (citing United States v. Chambers, 987 F.2d 1331, 1334 (8th Cir. 1993)). "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. El-Alamin, 574 F.3d 915, 924 (8th Cir. 2009) (internal quotation marks omitted). "[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." United States v. Leon, 468 U.S. 897, 922 (1984) (internal citations and quotation marks omitted). However,

> [t]he Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

United States v. Grant, 490 F.3d 627, 632-33 (8th Cir. 2007) (quoting Leon, 468 U.S. at 923).

In determining whether to apply the exclusionary rule in this case, the Court is mindful that "[a]s a judicially-created remedy, the exclusionary rule applies only where 'its remedial objectives are thought most efficaciously served.'" United States v. Hamilton, 591 F.3d 1017, 1028 (8th Cir. 2010) (quoting Arizona v. Evans, 514 U.S. 1, 11 (1995)). Therefore, because "[t]he exclusionary rule is not an individual right, . . . it applies only where it results in *appreciable*

*deterrence*." Id. (citations and internal quotation marks omitted).  The exclusionary rule's "costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." Herring v. United States, 129 S. Ct. 695, 701 (2009) (quoting Penn. Bd. of Probation and Parole v. Scott, 524 U.S. 357, 364-65 (1998)).

Defendant's sole argument with regard to Leon is that "the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Def.'s Br. at 6 (quoting Leon, 468 U.S. at 923).  In support of his proposition, Defendant cites only to United States v. Leake, 998 F.2d 1359, 1366-67 (6th Cir. 1993).  Leake is not binding upon this Court; furthermore, the facts of Leake are distinguishable from the facts of this case, rendering it unpersuasive.  In Leake, the district court suppressed evidence that connected Leake to the possession, distribution, and manufacture of marijuana. Id. at 1360.  An unidentified tradesman who worked in Leake's home informed law enforcement that he saw a large amount of marijuana in Leake's basement. Id. at 1360-61.  Law enforcement conducted surveillance at Leake's house for two hours on successive nights but noticed nothing unusual. Id. at 1361.  As a result of the surveillance, law enforcement only "confirmed the address of the house, observed that it matched the description given by the anonymous caller, and noted that the house had a basement as the caller had said," and later found that one of the cars in the driveway to the house was registered to Leake. Id.  Using this information as the basis for a search warrant application, a magistrate issued a search warrant. Id.  Execution of the warrant unveiled three-hundred pounds of marijuana. Id.  On appeal, the Sixth Circuit affirmed the suppression order, concluding that "[a] review of the suppression hearing transcript reveals a police officer who himself was very unsure about the adequacy of investigation he performed in the wake of the anonymous tip.  The two-night, two-hour surveillance simply produced no significant corroboration of the informant's claim of marijuana trafficking," and therefore "a reasonably well-trained officer

'would have known that the search was illegal despite the magistrate's authorization.'" Id. at 1367 (quoting Leon, 468 U.S. at 922).

The reasoning of Leake is inapplicable to the facts of this case for a number of reasons. The Leake informant was anonymous and provided his information to law enforcement over the phone. Here, the CI was known to law enforcement and provided information to law enforcement face-to-face. When law enforcement meets and questions an informant face-to-face, it allows law enforcement "to determine whether [the informant] appear[s] to be a credible person." United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994); see also United States v. Wallace, 550 F.3d 729, 734 (8th Cir. 2008) (noting that "more weight [is] given to information where officers meet face-to-face with the informant and judge her to be credible"); United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005) ("[O]fficers could assess the informant's credibility because the information was provided in person."). Officer Hoelscher testified that interviewing the CI face-to-face allowed him to assess the CI's credibility and that the CI never did anything that caused Officer Hoelscher to think that the CI was not credible. See United States v. Buchanan, 574 F.3d 554, 562 (8th Cir. 2009) ("The circumstances of personal questioning may also enhance reliability and credibility."); United States v. Neal, 528 F.3d 1069, 1074 (8th Cir. 2008) (noting that when law enforcement interviews informants in person, it better allows law enforcement to determine the informant's credibility). Therefore, because Officer Hoelscher interviewed the CI face-to-face on numerous occasions, it afforded him a better opportunity to assess the CI's credibility than law enforcement had to assess the informant's credibility in Leake.

While the Leake court concluded that the lack of corroboration rendered law enforcement's decision to rely on the validity of the warrant unreasonable, here law enforcement took a number of steps in order to corroborate the information provided by the CI. For instance, Officer Hoelscher showed the CI a picture of Defendant, and the CI positively identified the

9

individual as the man he knew from prior contact and from whom the CI had purchased marijuana during the controlled buys. United States v. Oropesa, 316 F.3d 762, 768-69 (8th Cir. 2003) (concluding that police believed probable cause existed, in part, because an informant identified the target of a warrantless arrest in a single photograph). Additionally, the CI not only told law enforcement where the marijuana would be located, but he also completed three controlled buys under law enforcement surveillance. This stands in contrast to Leake, wherein surveillance of Leake's residence "revealed nothing unusual." Leake, 998 F.2d at 1361.

In addition, the Court may take into account information known to law enforcement that was not disclosed in Officer Hoelscher's search warrant affidavit to the issuing judge. United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008) ("When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." (quoting United States v. Proell, 485 F.3d 427, 431 (8th Cir. 2007))). In this case, law enforcement corroborated additional facts that were not disclosed to the magistrate in Officer Hoelscher's affidavit. Officer Hoelscher testified that he completed a walk through of Defendant's apartment building and corroborated that the layout of the building was as the CI described and that apartment number four was located on the second floor of the southeast corner of the apartment building, as the CI indicated. Officer Hoelscher also utilized an electronic monitoring device during the first and third controlled buys, which enabled him to hear most of the CI's conversations during those buys. Officer Hoelscher testified that what he was able to hear while monitoring the controlled buys was consistent with what the CI told him during debriefing. Under the totality of the circumstances, including this additional indicia of probable cause, law enforcement's belief in the sufficiency of the affidavit was not unreasonable. See United States v. Stevens, 530 F.3d 714, 719 (8th Cir. 2008) ("The corroboration of even innocent, minor details can support a finding of probable cause.").

Further, Officer Hoelscher submitted his affidavit and warrant application to an assistant Polk County, Iowa, attorney twice for review.  In Officer Hoelscher's experience, if the reviewing attorney concludes that an affidavit lacks probable cause, the reviewing attorney informs the affiant officer that more information is needed in order to establish probable cause.  Here, the reviewing attorney did not inform Officer Hoelscher that either the first or the second affidavit needed additional information in order to establish probable cause, which supports a finding that Officer Hoelscher's belief that information in the affidavit constituted probable cause was not unreasonable.  See United States v. Johnson, 78 F.3d 1258, 1264 (8th Cir. 1996) ("Seeking the advice of an attorney can be factored in to determine if an officer's conduct is objectively reasonable.").

Defendant's final argument is that the CI was himself facing a criminal charge for possession of marijuana and that the CI might have been motivated to fabricate a story in order to help "work off" a charge.  This is at once a common occurrence and a reasonable concern.  However, "even if [the Court] entertain[s] some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case."  Illinois v. Gates, 462 U.S. 213, 234 (1983); United States v. Montes-Medina, 570 F.3d 1052, 1060 (8th Cir. 2009).  In this case, the CI's tips are entitled to greater weight and credibility because the CI gave what Officer Hoelscher considered to be detailed information about Defendant and the CI witnessed first-hand Defendant sell marijuana numerous times.  See Gates, 462 U.S. at 234; see also United States v. Kattaria, 553 F.3d 1171, 1178 (8th Cir. 2009) (en banc) (concluding that law enforcement relied in good faith on the validity of a warrant, in part, because law enforcement's supporting affidavit "was based on information provided by a [cooperating defendant] with first hand knowledge of the facts reported").  There is nothing in the record to indicate that

11

Officer Hoelscher's knowledge of the CI's criminal status undermined Officer's Hoelscher good-faith belief in the sufficiency of the warrant affidavit.

Because the exclusion of evidence is to be this Court's "last resort," not its "first impulse," the goals of the exclusionary rule would not be furthered by granting Defendant's motion. Herring, 129 S. Ct. at 700.  Here, law enforcement interviewed the CI face-to-face on numerous occasions, corroborated information provided by the CI, worked with the CI to execute three controlled buys from Defendant, and submitted the application for a warrant to a county attorney for review, which was issued by a neutral judge.  Under the totality of the circumstances in this case, the Court cannot find that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923.[6]

### III. CONCLUSION

For the reasons stated, Defendant's Motion to Suppress (Clerk's No. 30) must be **denied.**

**IT IS SO ORDERED.**

Dated this 14th day of April, 2009.

*/s/ James E. Gritzner*
JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT

---

[6] Based upon this determination, this Court does not decide whether Officer Hoelscher's warrant application met the threshold showing of probable cause. See Warford, 439 F.3d at 841.